(C. D. 1588)

PACKAGED HARDWARE CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 17, 1954)

*Siegel, Mandell & Davidson* (*Joshua M. Davidson* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Richard M. Kozinn*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Certain imported merchandise described in the record as "Wardrobe Locks" was classified by the collector of customs as cabinet locks pursuant to the terms of paragraph 384 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 384), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and duty was assessed thereon at the rate of 10 per centum ad valorem plus 75 cents per dozen.

The protest of plaintiff, as amended, claims alternatively that the merchandise, if classifiable in said paragraph 384, is properly dutiable at 10 per centum ad valorem plus 35 cents a dozen, or 10 per centum ad valorem plus 50 cents a dozen, or should be classified in paragraph 397 of said act (19 U. S. C. § 1001, par. 397), as modified by said trade agreement, and dutiable at 22½ per centum ad valorem.

The provisions of the statutes above referred to are here set forth.

Paragraph 384, as modified, *supra*:

Cabinet locks, not of pin tumbler or cylinder construction:

| | |
|---|---|
| Not over one and one-half inches in width_____ | 35¢ per doz. and 10% ad val. |
| Over one and one-half and not over two and one-half inches in width_____ | 50¢ per doz. and 10% ad val. |
| Over two and one-half inches in width_____ | 75¢ per doz. and 10% ad val. |

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

    *        *        *        *        *        *        *

    Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or.

other metal (not including platinum, gold, or silver),
but not plated with platinum, gold, or silver, or
colored with gold lacquer:

\* \* \* \* \* \* \*

Other (except slide fasteners and parts thereof) _ _ 22½% ad val.

As stated in the brief of plaintiff—

The chief claim herein is that the merchandise is not in fact a cabinet lock but is in fact a wardrobe lock, thus taking it out of the provisions of Paragraph 384 and bringing it into the provisions of Paragraph 397 as a manufacture of metal not specially provided for since there is no provision for wardrobe locks in the Tariff Act. The second claim is that if it is a cabinet lock it is not over 2½″ in width as assessed by the Collector but is in fact 1½″ in width.

Plaintiff introduced the testimony of five witnesses three of whom were engaged in the hardware industry and the other two in the wardrobe industry. Their testimony was not rebutted or refuted, and the defendant has not filed any brief or argument in support of the collector's classification.

It is agreed that the locks in controversy are wholly or in chief value of metal, not plated with platinum, gold, or silver. If, therefore, the locks in question are not "cabinet" locks, they would appear to be excluded from said paragraph 384 and, in the absence of any more specific provision, would be subject to classification in said paragraph 397, as claimed by plaintiff.

Fred Gerson testified that he had been president of the plaintiff corporation since 1947; that it is "a division of my main business which is Akron Hardware Manufacturing Corp., which was founded in 1939, or 13 or 14 years ago"; that "Akron is a manufacturer of hardware and Packaged is a wholesaler—it specializes in the sale to certain types of outlets. It buys in this country and abroad and sells. It does not manufacture." The witness testified to his familiarity with the imported merchandise which is described on the consular invoice as "6000 Dozen Wardrobe locks No. 58S—P. S. size 3 x 1½″" with 1 nickeled key," and a sample representing it was received in evidence as exhibit 1.

The witness further stated that he had already sold about 5,000 dozen of the importation to manufacturers of wardrobes; that he was familiar with their use on wardrobe doors to lock one door against the other; that they are fastened to doors in a vertical position so that the bolt may operate from left to right or right to left, whereas cabinet locks are adjusted to the doors of a cabinet in a horizontal position so that the fastening medium operates in a vertical position up and down. He identified the size of exhibit 1 as being 1½ inches wide and 3 inches high or long and testified that it is bought and sold in the trade as a wardrobe lock.

The witness was then asked the difference between a wardrobe and a cabinet. He explained as follows:

Well, I would say a wardrobe is a—it has doors and while a cabinet is mainly made of shelves and doors and drawers.

\*    \*    \*    \*    \*    \*    \*

\* \* \* A wardrobe is mainly used for the storage of clothes while a cabinet is mainly used for storage of either documents or papers or many other items, but a wardrobe is just a clothes affair.

When asked to explain the difference between a wardrobe lock and a cabinet lock, the witness stated—"A wardrobe lock is used on a wardrobe and a cabinet lock is one that is used on a cabinet"; that exhibit 1 is not a cabinet lock; and that he had never seen it used in any other way except on wardrobes.

George Goldstein testified that he had been in the wholesale hardware business for 25 years as an "owner, buyer, manager, seller; everything"; during that period he had handled merchandise like exhibit 1 and was familiar with its use in wardrobes; that he had never seen it used on a cabinet. His testimony throughout was substantially like that of the witness Gerson.

When asked the distinction between wardrobe locks and cabinet locks, Goldstein replied—

A wardrobe lock is definitely used only as a wardrobe lock for this simple reason, your Honor: if you can take this lock, Exhibit 1, I will try to explain the best I can without a sample of a cabinet lock, this having a bolt that runs horizontally, this wardrobe lock, you have two doors coming together and the only way to keep them together is throw a bolt from one side to another. Now, you can place this item on the right-hand side of the wardrobe and have it thrown to the left or the other side. There are times when wardrobes are up against the wall and it wouldn't be convenient to have it opened that way, while a cabinet lock, I'd say would be best described as perhaps a desk lock. It has a bolt that doesn't go both ways, but the bolt will only come up and go into a groove that will use it. If you have used a desk lock, a desk lock is in the category of a cabinet lock. Now, you would never use this Exhibit 1 as that for two reasons: First of all, because of its construction. This key will fit any wardrobe lock in the United States. \* \* \*

He further testified that the lock represented by exhibit 1 can be utilized on either a left-hand or right-hand door operating vertically, while a cabinet lock works up and down.

David Hershey testified that he had been associated in the hardware business since 1932 and with the Merchants Hardware Co., Inc., since 1945, industrial distributor of hardware to the woodworking trade; that he was very familiar with merchandise like exhibit 1 as a result of his business dealings with the wardrobe trade selling wardrobe locks; and that it is bought and sold as a wardrobe lock. He admitted that he did not know what a cabinet lock is.

Samuel Kerievsky testified that he had been engaged in the manufacture of wooden wardrobes for 23 years as a partner in the firm of Thatford Cabinet Co.; that he was familiar with exhibit 1 as "the type of lock we use in our work"; that it is used on the doors of a wardrobe and that he knows of no other use for it.

Harold Lew testified that he was an officer of the firm of J. Lew & Sons, Inc., with which he had been associated for 22 years; that the sole business of the company was the manufacture of wardrobes. He stated that he was familiar with articles such as exhibit 1 and had purchased some 3,000 dozen of them from the Packaged Hardware Corp., the importer in this case, which were used exclusively in manufacturing wardrobes.

The uncontradicted testimony of the witnesses introduced by the plaintiff conclusively establishes that the imported articles are not cabinet locks but are, in fact, wardrobe locks. They are, therefore, excluded from the terms of said paragraph 384, and, since there is no specific provision for wardrobe locks in the tariff act, the articles being in chief value of metal, not plated with platinum, gold, or silver, fall within the provisions of paragraph 397, as modified, *supra*, as articles of base metal, not specially provided for, and dutiable at the rate of 22½ per centum ad valorem, as claimed by plaintiff. To that extent the protest is sustained, all other claims being overruled.

Judgment will be entered accordingly.